**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| THE KRAFT HEINZ COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL UNION 355,<br><br>Defendant. | Civil Action No. 24-580-GBW |

Kelly A. Green, SMITH, KATZENSTEIN & JENKINS LLP, Wilmington, DE; Bernard J. Bobber, Immon Shafiei, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., Philadelphia, PA.

*Counsel for Plaintiff*

Lance Geren, O'DONOGHUE & O'DONOGHUE, LLP, Wilmington, DE; Paul D. Starr, ABATO, RUBENSTEIN AND ABATO, P.A, Baltimore, MD.

*Counsel for Defendant*

**MEMORANDUM OPINION**

October 14, 2026
Wilmington, Delaware

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Plaintiff The Kraft Heinz Company ("Kraft Heinz" or "Plaintiff") brought this action against Defendant International Brotherhood of Teamsters Local Union 355 ("Local 355" or "Defendant") seeking to prevent Local 355 from "proceeding to labor arbitration to seek a remedy from a labor arbitrator on a claim for certain retiree medical benefits." D.I. 1 at 1. Now pending before the Court are cross-motions for summary judgment filed by Plaintiff (D.I. 26) and Defendant (D.I. 30). Both Motions have been fully briefed. D.I. 27; D.I. 31; D.I. 32; D.I. 33.

For the reasons set forth below, the Court grants summary judgment in favor of Plaintiff.

## I. BACKGROUND

### A. Factual Background[1]

Kraft Heinz is a "food and beverage company operating numerous facilities throughout North America, including a food manufacturing facility in Dover, Delaware ('Dover Facility')." D.I. 28 ¶ 1. Certain hourly employees at Kraft Heinz's Dover Facility are "represented for purposes of collective bargaining" by Local 355. *Id.* ¶ 2. Kraft Heinz and Local 355 "negotiated and entered into a series of successive CBAs [(collective bargaining agreements)] that govern the terms and conditions of employment of the Dover Facility's employees in the bargaining unit represented by [Local 355]." *Id.*¶ 3. "The relevant CBA became effective July 30, 2023 and remains effective through June 30, 2027." *Id.* ¶ 6.

"In October 2023, Local 355 filed a grievance on behalf of former bargaining unit employee Evelyn Benson ("Ms. Benson"), through which it claimed Kraft Heinz denied Ms.

[1] The undisputed facts contained in this section are derived from Plaintiff's Statement of Undisputed Material Facts (D.I. 28) and the Statement of Facts section of Defendant's Combined Opening and Answering Brief (D.I. 31).

Benson and similarly situated individuals participation in a Company-sponsored retiree health plan, in violation of the CBA." D.I. 31 at 2. After the parties were unable to resolve the grievance, Local 355 "filed an Arbitration Demand with the American Arbitration Association ('AAA')." D.I. 28 ¶ 21. Kraft Heinz refused to arbitrate, "asserting that [Local 355's] grievance was not arbitrable pursuant to the CBA's Section 26(K)." *Id.* ¶ 22.

### B. Procedural History

Plaintiff filed the Complaint (D.I. 1) in this action on May 14, 2024, seeking "preliminary and permanent injunctive and declaratory relief prohibiting the arbitration of a labor grievance regarding retiree eligibility for certain benefits." D.I. 27 at 1. Also on May 14, 2024, Plaintiff filed a Motion for Preliminary Injunction. D.I. 4. On June 12, 2024, Defendant filed its Answer, which included a counterclaim seeking to compel arbitration. D.I. 15. On August 15, 2024, Defendant filed a letter consenting to the preliminary injunction. D.I. 18. On November 26, 2025, the parties submitted a Joint Proposed Briefing Schedule in which they agreed to resolve all issues in this action through the submission of cross-motions for summary judgment. D.I. 23.

## II. LEGAL STANDARDS

### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact is one that could lead a reasonable jury to find in favor of the nonmoving party." *Bletz v. Corrie*, 974 F.3d 306, 308 (3d Cir. 2020) (citing *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). "The court must review the record as a whole, draw all reasonable inferences in favor of the nonmoving party, and must not 'weigh the evidence or make credibility determinations.'" *Id.* at 308 (quoting *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016)).

The construction of a contract is "purely a question of law," and thus "can be resolved by the Court on summary judgment." *S. Afr. Enter. Dev. Fund v. Ironshore Specialty Ins. Co.*, C.A. No. 21-1463-GBW, 2024 WL 4145024, at *3 (D. Del. Sep. 11, 2024) (quoting *Exelon Generation Acquisitions, LLC v. Deere & Co.*, 176 A.3d 1262, 1263 (Del. 2017)). In construing each term, "[t]he objective is to give effect to the parties' mutual intent at the time of contracting." *Goggin v. Nat'l Union Fire Ins. Co. of Pittsburgh*, C.A. No. N17C-10-083 PRW CCLD, 2018 WL 6266195, at *4 (Del. Super. Ct. Nov. 30, 2018). Delaware law applies an objective theory of contract, which seeks to construe terms to "adhere to what 'would be understood by an objective, reasonable third party.'" *Id.* (citing *Salamone v. Gorman*, 106 A.3d 354, 367-68 (Del. 2014)).

**B. Permanent Injunction**

A party seeking a permanent injunction must demonstrate that "(1) it will suffer irreparable injury, (2) no remedy available at law could adequately remedy that injury, (3) the balance of hardships tips in its favor, and (4) an injunction would not disserve the public interest." *TD Bank N.A. v. Hill*, 928 F.3d 259, 278 (3d Cir. 2019) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). "[C]ourts should issue injunctive relief only if the moving party makes a sufficient showing that such relief is warranted under the particular circumstances of that case." *Id.* at 265 (citing *eBay*, 547 U.S. at 393-94); *see also Salazar v. Buono*, 559 U.S. 700, 714 (2010) (plurality opinion) ("An injunction is an exercise of a court's equitable authority, to be ordered only after taking into account all of the circumstances that bear on the need for prospective relief.").

## III. DISCUSSION

Plaintiff seeks a permanent injunction, while Defendant seeks an order requiring Plaintiff to arbitrate the grievance according to the CBA. The parties have represented that there are no material facts in dispute. Thus, the only question for summary judgment is whether the parties' dispute is arbitrable pursuant to the terms of the CBA.

### A. The Parties' Dispute Is Not Arbitrable

"Arbitration is the preferred method for resolving disputes between a union and an employer." *E.M. Diagnostic Sys., Inc. v. Loc. 169, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 812 F.2d 91, 94 (3d Cir. 1987). When interpreting an arbitration provision in a CBA, courts must apply "a presumption of arbitrability in that 'arbitration should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *Id.* (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)). In *E.M. Diagnostic Systems*, the Third Circuit outlined a helpful framework for analyzing the issue of arbitration in a CBA: "(1) Does the present dispute come within the scope of the arbitration clause? (2) does any other provision of the contract expressly exclude this kind of dispute from arbitration? and (3) is there any other 'forceful evidence' indicating that the parties intended such an exclusion?" 812 F.2d at 95. The Court will focus its analysis on the same inquiries.

#### 1. The Grievance Falls Within the Scope of the Arbitration Clause

"[A] claimed contract violation comes within the scope of an arbitration clause of this character when the subject matter of the grievance is one that is within the zone of interests that have received protection in the collective bargaining agreement." *Id.* The arbitration provision in the CBA, detailed in Section 30, states: "Should any difference arise between the Company and the Union and/or employees concerning the meaning, application or interpretation of specific provisions of this Agreement, . . . either the Company or the Union may submit such difference to arbitration . . . ." D.I. 28 ¶ 7.

As an initial matter, the Court finds the arbitration clause in the parties' CBA to be broad. It designates for arbitration disputes over "the meaning, application or interpretation of specific

provisions of this Agreement" – language which is akin to other CBA arbitration provisions that the Third Circuit has found to be broad in the past. *See Lukens Steel Co. v. United Steelworkers of Am. (AFL-CIO)*, 989 F.2d 668, 673 (3d Cir. 1993) (finding presumption of arbitrability where the arbitration provision covered "the meaning and application of, or compliance with, the provisions of this Agreement"); *see also E.M. Diagnostic Sys., Inc.*, 812 F.2d at 93 (finding presumption of arbitrability where the arbitration provision covered "[a]ny dispute arising out of a claimed violation of this Agreement"); *United Steelworkers of Am., AFL-CIO-CLC v. Rohm & Haas Co.*, 522 F.3d 324, 328 (3d Cir. 2008) (finding presumption of arbitrability where the arbitration provision covered "the meaning of the Articles of this contract"); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied-Indus. & Serv. Workers Loc. Union 943 v. E.I. DuPont de Nemours & Co.*, 338 F. App'x 209, 213 (3d Cir. 2009) (finding presumption of arbitrability where the arbitration provision covered "[a]ny question as to the interpretation, or any alleged violation, of any provision of" the CBA). Since the CBA in the present case expressly discusses post-retirement benefits, the presumption of arbitrability applies to the interpretation of those provisions. *Cf. Rohm & Haas*, 522 F.3d at 332 (explaining that even where an arbitration clause is broad, "the underlying basis for the grievance submitted . . . must still arise from some specific article of the . . . CBA").

The Court is unpersuaded by Plaintiff's arguments to the contrary. Plaintiff contends that the grievance does not fall within the scope of the arbitration clause because the issue of eligibility is governed by Plaintiff's post-retirement benefits plan, not the CBA. That conflates the question of whether the arbitration clause's scope is broad, with whether the issue of eligibility is excluded vis-à-vis other language in the contract or external evidence. In that same vein, the cases on which Plaintiff relies regarding the scope of the arbitration provision are distinguishable. *See* D.I. 27 at

9. For instance, while the court in *Rohm & Haas* found the grievance to be outside the scope of the arbitration provision, it did so on the basis that the CBA did not address disability benefits at all. *Rohm & Haas*, 522 F.3d at 332. Therefore, even a broadly worded arbitration provision in the *Rohm & Haas* CBA would not apply to claims over disability benefits. *Id.* In this action, in contrast, there is no dispute that Section 26 of the CBA expressly discusses the type of post-retirement benefit that is the subject of Ms. Benson's grievance. Plaintiff also cites *E.I. DuPont de Nemours & Co.*, in which the court distinguished disputes over individual eligibility from those over modifications to the plan generally. *See E.I. DuPont de Nemours & Co.*, 338 F. App'x 209, 213 (3d Cir. 2009). However, the court in *E.I. DuPont de Nemours & Co.* made that distinction in its analysis for whether there was evidence of a purpose to exclude a claim from arbitration, not for whether the arbitration clause was broad. Thus, the *E.I. DuPont de Nemours & Co.* court's analysis is inapplicable to this initial question of the scope of the arbitration clause in the CBA.

For the above reasons, and in light of the Third Circuit's analysis of similar arbitration provisions in CBAs, the Court finds that the presumption of arbitrability applies to the CBA in this action. That presumption can only be overcome if Plaintiff can point to express language in the CBA excluding a particular grievance from arbitration and/or forceful evidence of a purpose to exclude the grievance from arbitration. *See id.*

### 2. The Language of Section 26 of the CBA and the Plan Documents Evidence an Intent to Exclude Eligibility Grievances From Arbitration

The Court next turns to whether there is any evidence of an intent to exclude grievances regarding post-retirement benefits from the broad language of the arbitration clause. Post-retirement benefits are discussed in Section 26 of the CBA, and disputes regarding the same are specifically outlined in Section 26(K), titled "Plan Documents Govern." D.I. 28 ¶ 10. Therein, the CBA states that the "extent of coverage under all benefits programs . . . will be governed by

the terms and conditions set forth in applicable insurance policies and/or plan documents." *Id.* It further explains that "[a]ny questions or disputes concerning any benefit programs will be resolved in accordance with the terms and conditions set forth in the applicable insurance policies or plan documents." *Id.*

The core of the parties' dispute concerns whether eligibility for the post-retirement benefit plans are governed by the CBA (which would mean that the instant dispute is covered by the CBA's arbitration provision), or by the actual benefits plans (which would exclude the instant dispute from the arbitration provision). In Plaintiff's view, a retiree's eligibility for post-retirement benefit plans is expressly excluded by the statement in Section 26(K) of the CBA that "disputes concerning any benefit programs" are to be resolved pursuant to the plan documents. D.I. 27 at 11. To that end, the plan documents "provide a detailed framework for the Union and/or Benson to challenge determinations regarding Benson's eligibility for post-retirement benefits, but that framework does not include arbitration." D.I. 32 at 4; *see also* D.I. 28 ¶ 14 (outlining the discretionary authority of the plan administrator in construing the terms of the plan, including eligibility for the plan); *id.* ¶ 16 (outlining who is eligible for the plan). Defendant, on the other hand, distinguishes disputes over *eligibility* for the plan with disputes over the *extent of coverage* for plan participants. D.I. 31 at 6. While a grievance over the extent of coverage might be excluded from arbitration per the language of Section 26(K), Defendant maintains that the issue of eligibility for post-retirement plans is not mentioned in 26(K) and, thus, those disputes are instead covered by the broad language of the CBA's arbitration provision.

The Court agrees with Plaintiff. In the Court's view, the language of 26(K) evinces a clear intent to expressly exclude disputes over post-retirement benefits from the arbitration and dispute resolution procedures that otherwise govern the CBA. The statement in Section 26(K) that "***[a]ny***

***questions or disputes*** concerning any benefit programs" are to be resolved in accordance with the plan documents' terms and conditions is particularly persuasive. The Court finds no reason to read eligibility grievances out of such a broadly worded provision. Moreover, although Defendant contends that Section 26(K) of the CBA does not address eligibility over benefits programs, the actual plan documents provide forceful evidence that the plan documents govern eligibility disputes. Indeed, they state that the plan administrator is given "complete discretionary authority to interpret and construe the terms of the Plan," including "eligibility for" the plan. D.I. 28 ¶ 14. The plan also explains in detail the procedure for disputes over eligibility. *See* D.I. 5-1, Ex. B, at 23-24. Thus, all of the relevant documentation indicates that the post-retirement benefit plan at issue in this action, and eligibility thereof, is governed by the procedures and protocols detailed in the plan itself, *not* by the arbitration provision in the CBA.

The Court's conclusion is further supported by Third Circuit case law interpreting CBAs for similar grievances. For instance, as Plaintiff points out, the Third Circuit has distinguished disputes over employee eligibility for a benefits plan from those over modification of the actual terms in the CBA governing employee benefits. *See E.I. DuPont de Nemours & Co.*, 338 F. App'x at 213; *see also Rohm & Haas*, 522 F.3d at 335. Here, the parties are not disputing an amendment to the benefits provisions of the CBA. Rather, the parties are clear that the dispute is over a specific retiree's eligibility of such benefits. That distinction is material in these circumstances – since interpretation of the CBA itself is not at issue, this grievance falls outside of the scope of arbitration pursuant to the parties' CBA. Nevertheless, this is not to say that "benefits provided pursuant to ERISA can never be subject to the grievance or arbitration provision contained within a CBA." *Id.* Indeed, without explicit language pointing to alternative dispute procedures for post-retirement benefits programs, a CBA's arbitration clause may apply. But when there are clear indications

that the parties intended for separate procedures to govern benefits grievances, as here, a CBA's arbitration provision cannot override that intent.

For these reasons, the Court finds that the express language of the CBA and the language of the plan documents provide forceful evidence that disputes over eligibility for post-retirement benefits plans are excepted from the CBA's arbitration provision.

**B. Plaintiff Is Entitled to a Permanent Injunction**

Having determined that the grievance in the instant action is not arbitrable, the Court next turns to whether Plaintiff is entitled to a permanent injunction enjoining arbitration of the grievance based on the equitable factors.

**1. Plaintiff Will Suffer Irreparable Injury Absent Injunctive Relief**

With respect to the first two equitable factors, the Court considers whether Plaintiff will suffer an irreparable injury and whether it has an adequate remedy at law. "The Third Circuit recognizes a party is irreparably harmed as a matter of law if forced to arbitrate a matter that it has not agreed to arbitrate." *Am. Life Ins. Co. v. Parra*, 25 F. Supp. 2d 467, 479 (D. Del. 1998) (citing *PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 515 (3d Cir. 1990) ("[T]he harm to a party would be per se irreparable if a court were to abdicate its responsibility to determine the scope of an arbitrator's jurisdiction and, instead were to compel the party, who has not agreed to do so, to submit to an arbitrator's own determination of his authority.")). Thus, since the Court has found that Plaintiff has not agreed to arbitrate claims over eligibility of post-retirement benefits, Plaintiff would be irreparably harmed if forced to do so. Plaintiff lacks an adequate remedy at law for such harm. Defendant has provided no argument to the contrary. Thus, the first two equitable factors weigh in favor of granting a permanent injunction.

### 2. The Balance of Hardships Favors Granting the Injunction

The Court next considers the balance of hardships if the Court grants a permanent injunction. Defendant has not presented any evidence that it will suffer harm if the permanent injunction is granted. *See Lingo v. Lingo*, 785 F. Supp. 2d 443, 456 (D. Del. 2011) (finding that the balance of hardship favored the plaintiffs where the "defendants presented no evidence of the harm they will suffer if the court grants a permanent injunction"). Nor can the Court identify any harm Defendant would suffer by being required to follow the procedures detailed in the plan documents themselves. In contrast, Plaintiff has demonstrated the hardship it will suffer if forced to arbitrate a grievance that it did not agree to arbitrate. *See* D.I. 27 at 13-14. Thus, this factor weighs in favor of granting the permanent injunction.

### 3. The Public Interest Favors Granting the Permanent Injunction

The Court next considers whether a permanent injunction is in the public interest. Plaintiff argues that granting the permanent injunction will "serve the public's interest in seeing that a party's contractual right to not arbitrate is respected." D.I. 27 at 14. Plaintiff further notes that the permanent injunction "comports with ERISA law and policy emphasizing that employee benefits are to be determined by the terms of a plan." *Id.* Defendant makes no argument to the contrary, nor can the Court identify any. While public policy generally strongly favors arbitration, especially in employment disputes, such is only the case when "the specific dispute falls within the scope of the clause." *Mayhan v. Sunoco, Inc.*, C.A. No. 18-355-RGA, 2020 WL 247517, at *3 (D. Del. Jan. 16, 2020). Since the Court has found that this dispute falls outside of the scope of the arbitration clause, the public interest does not favor compelling arbitration. Rather, the public interest favors honoring the parties' agreement to not arbitrate a dispute over eligibility for post-retirement benefits.

## IV. CONCLUSION

For the foregoing reasons, the Court grants summary judgment in favor of Plaintiff, and will enter injunctive relief enjoining Defendant from arbitrating disputes over eligibility for post-retirement benefits. The Court also denies Defendant's motion for summary judgment. The Court will issue an Order consistent with this Memorandum Opinion.